Case No. 16-2301, Jamal Thomas v. George Stephenson Oral argument not to exceed 15 minutes per side Mr. Robinson for the appellate May it please the court, Emmett Robinson for appellant Jamal Thomas and I'd like to reserve four minutes for rebuttal Before I jump into the substance of my client's habeas claim it's important to reiterate what's not presently at issue in the case The facts surrounding the crimes committed against Rodney and Teresa Harrison are uncontested at this point The same goes for my client's 26-50 year sentence for first degree home invasion in connection with those events That's not at issue The same goes for his 40-60 month sentence for felon in possession his 28-48 month sentence for felonious assault  None of that's at issue Rather, the only issue before the court is the sufficiency of the evidence supporting his additional conviction for assault with intent to commit murder or AWIM for which he was sentenced to a further 50-100 years in prison In its understandable keenness to punish the awful crimes committed against the Harrisons and likely at least in part because of the trial court's erroneous instruction that, quote, if the person did the assault, he intended to commit the offense, end quote the jury overreached on the AWIM charge only and the Michigan Court of Appeals failed to properly review that conviction perhaps just because of the sheer number of issues raised in front of the Court of Appeals by appellate counsel and then by my client in a pro se supplemental brief Because the jury's conclusion on the AWIM count was objectively unreasonable I asked the court to vacate my client's AWIM conviction and sentence only that The evidence supposedly in support of the AWIM conviction came exclusively from Mr. Harrison's trial testimony Yes, trial testimony Harrison testified that during the break-in he was told to mind Mr. Harrison I'm sorry, Harrison testified that my client was told to mind him while Davidson, the ringleader so to speak, searched the house for $150,000 that was supposedly hidden there To make Mr. Harrison still and quiet, basically to compel his cooperation my client threatened to shoot him if he moved or made noise But at no point did my client shoot or attempt to shoot Mr. Harrison In fact, he never physically harmed him or attempted to physically harm him in any way The prosecutor in closing actually said, quote, Mr. Thomas never touched anybody After an unsuccessful search for the money Was he charged also as an aider and abetter? Yes, yes he was And that's coming up exactly right now actually The counsel basically goes straight to the second argument, right? That we look at Davidson rather than what Taylor did himself Sure Right? That's fine with me Well, I'm asking, that's how you read it? That's how I read it, yeah I mean, I think the Michigan Court of Appeals It would probably be better spending your time dealing with the more difficult argument than with the easier one Sure So, factually that's what comes next So after Davidson was unable to find the money he came back into the room where Thomas was holding Mr. Harrison He kicked him three to four times, Mr. Harrison said, in the lower back And he struck him once with the butt of his pistol And while he, quote, kept asking where the money was Mr. Harrison said that he didn't know what he was talking about He didn't know about any money So then Davidson threatened that he would kill him by shooting him On these facts, I still think even considering this second assault It's objectively unreasonable to conclude that my client committed the AWIM offense because it can't be sustained, the conviction can't be sustained without proof, one, that the defendant committed an assault and two, that he committed that assault with his specific intent to kill the victim by means of that assault That he aided and abetted in the committing of such an assault Correct, correct With such an intent So, your position must be, I gather, that Davidson never intended to kill him either Not by means of the kicks, that's correct He may in the future have intended to shoot him, but that's hypothetical And under the case law, you can't reach out to a hypothetical future The Michigan Court of Appeals in Canberra made clear that it must be concurrent The intent must be concurrent Here's my question, I don't want to interrupt your question though, Chief Judge No, go ahead I'm sorry? Go ahead I have what I think boils down to a legal question rather than a factual question Sure Let's assume that there was sufficient evidence to show that Davidson, when assaulting the victim, intended to kill him At the same time that he was assaulting him, he intended to kill him By means of He didn't necessarily intend, without by, I'm saying By a series of events that would lead to his dying So you could literally, in English, say he was assaulted with the intent to kill He was assaulted, had the intent to kill Or, and you could say, well that's assault with intent to murder Or assault with intent to kill Because you had the intent to kill when you assaulted him It's just a coincidence in time I intend to kill him, and I'm assaulting him Or you could say, you have to be assaulting him in a way that will kill him Those are two different things Now I take it that you're arguing that the law is clear That it's one, not the other And that's where I'm puzzled You could have Michigan law be, for instance, the way I would assume a hypothetical Let's take the hypothetical of kidnapping with intent to murder If you kidnap with intent to murder, you don't necessarily intend the kidnapping to kill him You just have the intent to murder when you kidnap him So you could, tell me if I'm wrong, have a state statute which says If you assault someone while you have the intent to murder, that's criminal In order to win, you have to prove that that's, you have to demonstrate that that's not what the law is And I'm not seeing where it's clear that's not the law Are you with me? Do you see what I'm asking? No, I do I think, for instance, of the example, just to give it some color Of one of these ISIS murders Where they drag someone out It's a big production, we're murdering this person He's going to die He is going to die You are going to die Now we're going to start Let's start cutting your arm off And you cut some fingers off And whoop, the Marines come in Save him I can see why a state might want to criminalize that I certainly can see why All those hypotheticals are well and good, but that's not the law in Michigan Where is there a case where it's clear Where it's clear that they then had the intent to kill Cameron is not that case They rely on the conditionality of it They say, when the head was slammed against the wall They said, don't do this again to my buddies Or I'll come back and finish it off So it was conditional What they wanted to do was stop having that That's a different factual situation, isn't it? And all the language is geared to that factual situation So it makes me wonder whether that case Now I'm not saying the case proves the contrary I'm just not seeing why That couldn't be a legitimate interpretation of Michigan law Is it Michigan? Yes, you're correct It could be a legitimate interpretation of Michigan law Or If it's questionable Then I guess the court in this case Found that it was enough If there's no case that doesn't find that it's enough Then I'm left with AEDPA, which suggests that you lose What's wrong with that? I think you're perhaps miscomprehending the law I mean, in Warren v. Smith When this court stated the Michigan standard Based on the Michigan Court of Appeals It said that the assault had to be committed With a specific intent to kill the victim thereby It's not the case that there's a series of events A series of violent events that might lead to the death Which case is that? Warren v. Smith In which the I believe it was a habeas case And that the petitioner lost But it was because the petitioner had already duct taped the mouth And nose of the victim closed So the assault, the act It hadn't affected the death yet But the act had already been committed that would bring about the death It's not enough to say He intended to kill him in the course of these events That's not enough The old case people v. Hoffman There were threats early on There were threats to kill But the key was that he slammed the head of the person against The sidewalk several times Beat her with a baseball bat Taped her mouth shut again So I think the case law is clear That it must be that assault It can't be a series of events I understand the hypotheticals And they're good legal questions But they're not questions in Michigan law They're not extensions of those courts I took Cameron to be the strongest case you had And Cameron doesn't do it for you, does he? Not on that fine point It's a fine point, but it's the dispositive point Because here you have some pretty strong evidence That this is like the ISIS situation There's no sense in letting these people live But there's no Michigan case like the ISIS situation No, I agree with that I'm saying it's not clear But I'm trying to see where The case that's like our case is our case And there the Michigan court said it was enough So we got our case, which says it's enough And a lot of cases which don't say either way Then under AEDPA we'd have to affirm I don't think it's the case that other cases don't say either way Again, Warren B. Smith in the early cases All state the standard clearly The assault must be It must be the assault I mean, you can try to read it anew But I think that would be up to the Michigan courts If they want to make a new exception If you have any chance of winning You've got to show that the law is That the assaultive act was done The intent was to kill by means of the assaultive act That's right And you can't cite a case directly that says that Warren B. Smith says that Okay, well we'll look at that Which case is that? That's your case, Your Honor Sixth Circuit case I believe Plummer says that Okay, give us the cases Warren B. Smith The Sixth Circuit case Who wrote that? You stopped me there, Judge Plummer P. B. Plummer P. B. Taylor P. B. Taylor is a Michigan Supreme Court case Where the guy Where the Assailant shot him in the face And they remanded it To decide whether that was sufficient But they didn't remand this one And they didn't say this wasn't sufficient Under Michigan law That's right You're right, Judge In fact, they conducted no analysis whatsoever The Michigan Court of Appeals Laid out the facts and said this is sufficient Under Michigan law Without citing even these The cases that we cited, the briefs We'd have to say that they're wrong As a matter of Michigan law Yes Yes, that's right Under sufficiency, you know Even though it's a federal standard Under Jackson You still apply the state standard For the substantive crime Essentially, we'd have to say that The Michigan courts Even though they didn't engage In the kind of analysis That you would have liked Are unreasonably applying Jackson When they say that there is enough here As a matter of Michigan law No, that's a great question They're unreasonably applying Their own precedence And that is what Jackson forbids I hear you But I'm not sure I can buy What you just said But in any event, your time is up Thank you Thank you Good morning And may it please the court Michigan Assistant Attorney General Jared Schultz On behalf of the respondent warden The Michigan Court of Appeals In this case did not unreasonably apply Jackson v. Virginia When it determined that A rational juror could find that Jamal Thomas intended to kill Rodney Harrison Or at least that he knew That his co-defendant Larry Davidson Had that intent When the two broke into his house And assaulted him The latter one is the one You argue in your brief, right? Correct You don't argue the former one In your brief Well, we're not conceding that I think But you didn't argue it in your brief Correct, we did not argue it in the brief How did Thomas know That Davidson intended to kill him When Davidson kicked And pistol whipped Harrison? Well, Thomas was According to Harrison's testimony Thomas was present for Nearly the entire time Other than the first couple minutes When Harrison entered the house And he was actively following Harrison's directions And he was participating in the crime The whole time Up until the point When Harrison's wife came in And even up until that point He assaulted Harrison's wife And said she's getting away And it's our position that The only reason that They didn't kill Rodney Harrison that night Was because his wife arrived And was getting away And they had to leave at that point Right, do you concede though That kicking Harrison three or four times And hitting him once with the pistol But wasn't likely to result in Harrison's death? It may not have been But you have to look at The entire circumstances Of the whole crime in this case And they did not Looking at all the facts They did not intend For Harrison to leave that night alive How do you know that? Well, just looking at the entire facts of the case First, there's four critical points Pieces of evidence First, they tied him up execution style In their own words, it was execution style Second, the kicks Whether it's a strong case Of assault and intensive murder Doesn't matter It's whether a reasonable juror Could find that The several kicks to the kidney Causing kidney damage The pistol whip to the head Those are critical body parts And then as well as Davidson's unconditional statements That he was going to kill Harrison that night Specifically, one statement When he did not make to Harrison Himself at all He wasn't even in the same room He was upstairs on the telephone Talking to someone else When he said We're going to have to put four bullets in him And two in his wife All right, now Let's focus on that That was after the assault Had already taken place, right? I mean, the conversation was after Davidson had kicked and pistol whipped Harrison, right? Is there any proof in the record That Thomas heard Davidson Talking on the phone about the bullets? Well, I think you can reasonably infer that Because Thomas was According to Harrison Thomas, again, was present the entire time Wait, wait, wait Thomas was most of the time in the basement Holding the gun on Harrison, right? Right And Davidson Well, that conversation was someplace else Right, but Harrison heard that So you can reasonably infer That Thomas heard it as well And he didn't say Well, no, let's not kill this person He continued in helping Davidson commit the crime He continued to hold Mr. Harrison hostage at that point All right, what about the critical point That I think that Judge Rogers had talked about And me too Is that if the Michigan law is That the intent to kill Has to be the intent to kill by the assaultive act In other words, the kicking and pistol whipping Had to be done with intent to kill him right then and there That, you're likely to lose on If that's what the law is, isn't it? Because it's not enough That three kicks and a pistol whip Is not likely to have killed him I mean, it's different than In other words, these cases where The guy's shooting the gun through a wall At the girlfriend, you know, in the bathroom Obviously you can say Hey, there was an intent to kill By the very conduct of pulling the trigger Well, in response to that I would say that that's not Michigan law It's telling that Opposing counsel can only cite One unpublished case That occurred years after this case For his proposition that That particular act can't result Has to result in death To matter There is no Michigan case law First of all, we're not determining Whether it's an unreasonable application Of Cameron or of some other Michigan Court of Appeals unpublished case We're determining whether It's an unreasonable application of Jackson And opposing counsel in this case Is impermissibly using Jackson To advocate for his preferred Interpretation of case law Under Jackson, all we do is look to the elements To see what the elements are We don't look to interpret those elements This Michigan Court of Appeals Interpreted those elements as Saying that a future intent If he had the intent at the time of the assault But still intended that he eventually died that night That that's enough for an intent to kill And it doesn't matter what any other Michigan case says This case interpreted it as That's enough for intent And yes, Your Honor Where I'm starting to get a little confused here is With regard to this present intent And if successful it would have resulted in death Why wouldn't you still have An assault with intent to kill In the form of the pistol whipping And the kicking And the recognition of Well, darn, that didn't work Tried to kill him this way Now we're going to have to shoot him Does that negate the intent to kill In the first instance? Not at all And I think What I'm saying I believe that it was rational Certainly rational for a juror to conclude that Even at that time he intended to kill him I mean, he kicked him so hard he caused kidney damage And then he's hitting him on top of the head But my question is He didn't kill him that way But it seems as if the defense is saying And because he didn't Then there wasn't an intent to kill there And look, we can show that Because he then went on to talk to somebody About how many bullets they were going to have to put in him But my question is Why doesn't that actually argue the other way? Why doesn't it show that they intended to kill him? If they'd kicked him hard enough they would have But they didn't Or Davidson didn't So that meant they had to move on to the next thing I'm not sure I see why that wouldn't still be an intent An assault with intent to kill I think it absolutely is I guess I'm not quite understanding what you're saying Because that is our position That he absolutely had that intent to kill Then you may assume that I'm just trying to figure out If that is in fact what you were saying Okay Yes The way I look at it If Davidson had intended to kill Harrison As opposed to kicking him He had a gun, he'd just shoot him He said he was going to kill him But he didn't actually pull the trigger, did he? In fact, he then after the kicking Went up and spent another two and a half hours Searching for this hidden cache Correct And perhaps it was reasonable to infer That their goal was to get the cache To maybe threaten him To try to get him to tell him where the cache was But at the same time Their goal was They could have had the intent at the end of the night To kill him And I think that it reasonably shows that I guess it's right back to What Judge Ryders and I are thinking Well, what is the Michigan law? Was it enough that he intended to kill him At the end of the home invasion Enough to show that the assault was done With the intent to kill? Correct, and again That's an interpretation of Michigan law That this court can't do sitting on habeas review We only look to whether there's sufficient evidence Of the elements It might make, just to further that argument Or rebuttal I guess as well It might make sense to make it more criminal To assault someone intending that he die later Even if we have to do something else to get him dead You'd have less You'd probably assault someone worse If you thought he was going to end up dead anyway Correct And it might be more culpable to assault someone Not necessarily assuming that he will die instantly But knowing that he's going to be dead before you're through Correct Isn't there another under Michigan law Assault with intent to commit bodily harm? Correct, Your Honor And that's a lesser included offense in Michigan Yeah I could see I would easily say Hey, Davidson assaulted Harrison With the intent to at least cause severe bodily harm Or whatever the proper language is The question is Was it also though enough To say intent to kill As opposed to just inflict serious bodily harm? Right And I would respond that Whether me or you think Would have sat on the jury and said Well, this is just great bodily harm Not the intent to kill Or whether even on direct appeal We would have thought that Again, I would remind this court That we're on habeas review And certainly it was reasonable to conclude That some irrational juror would have found That given all of the circumstance of the case All of the threats All of the beating The assault The fact that they didn't stop Until the wife came and got away I think it was reasonable to conclude That he intended to kill Davidson intended to kill Can I ask you a formal question? Sure It's a difficult question we have before us, I think The legal question of what the Michigan law is Assume for the moment That we disagree with you And that there is a Jackson violation Is it In Cameron When the Supreme Court Or the High Court of Michigan Or the Middle Court Whatever, the Appellate Court of Michigan Came to that conclusion They allowed the conviction On the lesser included offense Correct Can that happen on habeas too? If we were to disagree with you on the issue What would be the formal way of dealing with that? Well, Your Honor Do you understand what I'm asking? Yes, I do I believe First I would point you to Morris v. Matthews It's a 1986 Supreme Court case 475 U.S. 237 That indicates that on habeas review Courts do have the authority to modify A conviction to a lesser included offense I believe the procedure in that case would be Is there a way to do though What happened in Whatever the case we were just talking about Coleman or Carson Cameron Cameron Is there a way for us to Have that result be Which is send it back to the state court And see whether it wants to do that? I guess It might be more consistent with habeas To say You can't uphold the conviction for this crime On this record But there's another crime Which he hasn't been convicted of So we send it back to the state court To decide whether to do that Is there a way that can be done formally? I think the state court's already determined that Because they have said that It's reasonable to find assault with intent to kill And the jurors found that as well And assault with intent to do great bodily harm Is a necessary lesser included offense So they already found all the elements You're saying the proper And indeed the only course is for us to make that determination And say he's It seems a little strange for us to be saying You're convicted of a state criminal statute That he's never been convicted of It seems to me like a state court ought to say that But that's just my intuition It seems wrong It seems the way you do it Is you send it back to the state courts And have them do it I just want to make sure that if we do it that way It can actually happen Well and again I would point to Morris v. Matthews You can modify a conviction And again The jury, the courts They all found Necessarily by finding that there was assault with intent to murder That there was also assault with intent to do great bodily harm Because all that they are challenging up to this day Is the intent to kill They're not challenging the intent to do great bodily harm Thank you If there are no more questions I'll just sum up by saying This court is Well aware of the doubly deferential standard of review Under habeas and under jets Probably aware of that by now Yes your honor And we would just say under that Nearly insurmountable hurdle The result is clear in this case Thomas' intent to murder conviction must stand Thank you Thank you Your honor Just in response to that last point Of course the habeas standard is very high But as the court recently decided in Tanner Reasonable speculation isn't sufficient to sustain a conviction And something that's objectively unreasonable Can't be allowed to stand Regarding several of your honors questions Toward the end of my time In responding to opposing counsel's comments Just so we're clear Michigan is kind of a strange creature When it comes to some criminal law At least last I knew There was no statute against first degree murder It's still a common law crime And so that's part of the reason we have this problem That there's no clearly laid out in a statute That would solve the problem that Judge Rogers is talking about But I think when we look at the case law And we're not substituting I'm not asking the court to substitute its judgment For the judgment of the jury I'm asking the court to look at the case law Because that is in essence the statutory law in Michigan Regarding assault with intent to commit murder And decide whether the intent can be divorced from the assault And I submit that if you look at the case law That can't be done My question with regard to that is What are the temporal limits of present intent? It has to be concurrent Right But this very minute, this exact act Your view of Michigan law requires that So if an intent to commit murder is unsuccessful And there is a discussion of Okay, so we missed What do we do next? Your view is that negates the intent from the first go around? No, no, absolutely not, Your Honor If there was an intent In this case would suffice to cause me to say No reasonable juror could have found that present intent Because if we're talking about the kicks The state conceded in its brief That the purpose of the kicks Was to get the information divulged And that Mr. Davidson intended to later kill him in the day By shooting him And that wasn't a fluke of the briefs In closing arguments at trial The prosecutor maintained that same position So I think we are all in agreement Despite counsel's brief comment That though that assault was not done With the intent to affect his death thereby Another brief point is that There is a statute for attempted murder Which is by poisoning And it's mentioned I think in a footnote in our brief It defines AWIM, assault with intent to commit murder Which is kind of a funny animal As a species of attempted murder So if you think of it as attempted murder He didn't attempt to murder him by kicking him Even the ISIS example They didn't attempt to murder him By cutting his fingers off They were going to murder him If it was said attempt to murder It would be different I think In the statute it's defined as a species of intent to murder To the extent there is statutory authority And again every case Not a single case in the history of the state They haven't been able to cite to a case And it's all common law Not a single case has allowed The assault to be divorced from immediate intent That that assault would affect the murder Not a case So I think that's We're in a strange position No case that goes the other way Or you have these three cases we're going to look at Yeah, yeah Johnson I mean the Johnson case He shot him in the leg And hit an artery And he was convicted of AWIM And the court of appeals reversed So they said even shooting somebody in the leg In that circumstance Isn't enough to prove you intended to kill him You would have shot him in the head or the torso Most of those cases I can't remember them by name I don't have that facility that some lawyers have But most of those cases The clear idea is This wasn't Like shooting him in the leg Doesn't necessarily convey the idea That you want him to die But when you have You could have a situation Where in the ISIS example It's clear they want him to die Before the end of the episode, right? Whereas most of these cases They say, well you've got to You've got to have the intent When you shoot him That you want him to die before we're over They don't say that They're cases which The facts show That that's not necessarily the case You shoot someone in the leg You don't want him to die Usually they say I never shoot people in the heart I wouldn't want to be a murderer I shoot him in the leg No, I take the point and you're right I think the closest thing we have there Is Cameron Where he was threatened And I understand your distinction on Cameron But it's still the case that he said I'm going to kill you if you do this Just like, you know, they're going to kill him If he doesn't divulge where the money is And you know, at the end of the night When they could have shot him They didn't He wasn't shot, so Thank you, counsel I'll give us tough cases The case will be submitted There being nothing further to be argued this morning The clerk may Were you a CJA counsel? Yes Okay, well Thank you ever so much We appreciate that We know the kind of The kind of work that you all do And we depend on it So thank you very much And with that, the clerk may